IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CASCADIA WILDLANDS and
OREGON WILD,

       Plaintiffs,

  v.

UNITED STATES FOREST SERVICE,
an administrative agency of
the United States Department
of Agriculture,

       Defendant,

  v.

FRERES LUMBER COMPANY, INC.,
an Oregon corporation, and
SENECA SAWMILL COMPANY, an
Oregon corporation,

       Defendant-
       Intervenors.

Case No. 6:12-cv-00804-AA
OPINION AND ORDER

---

Susan Jane M. Brown
Western Environmental Law Center
4107 N.E. Couch Street
Portland, Oregon 97232

John R. Mellgren
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
    Attorneys for plaintiffs

Page 1 - OPINION AND ORDER

S. Amanda Marshall
United States Attorney
Sean E. Martin
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
    Attorneys for defendant

Scott W. Horngren
American Forest Resource Council
5100 S.W. Macadam, Suite 350
Portland, Oregon 97239
    Attorney for defendant-intervenors

AIKEN, Chief Judge:

Defendant the United States Forest Service moves to alter or amend this Court's March 21, 2013 opinion and order, pursuant to Fed. R. Civ. P. 59(e), to the extent that it grants plaintiffs Cascadia Wildlands and Oregon Wild injunctive relief.[1] For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

This case involves a challenge to defendant's authorization of the Goose Project ("Project") located in the McKenzie Ranger District of the Willamette National Forest. Administrative Record ("AR") 13433. This region falls under the purview of the Northwest Forest Plan ("NFP"), which coordinates federal efforts to balance environmental concerns with the need for sustainable forest

---

[1] While defendant-intervenors Freres Lumber Company, Inc., and Seneca Sawmill Company did not file a separate motion for reconsideration, they did file a memorandum in support of defendant's motion. Defendant-intervenors' arguments in favor of reconsideration are analogous to those asserted by defendant. Accordingly, except where otherwise indicated, the Court will address defendant-intervenors' and defendant's arguments together.

Page 2 - OPINION AND ORDER

products within the range of the northern spotted owl. See Supplemental Record ("SAR") 001-083. The Project, in relevant part, would permit commercial harvest of approximately 2,100 acres of public lands in the Willamette National Forest, 454 acres of which is northern spotted owl habitat and 362 acres of which is Riparian Reserves. AR 13438.

In August 2009, the Forest Service prepared a Biological Assessment ("BA") to analyze the effects of various proposed federal actions on the northern spotted owl and its habitat. AR 2664-2780. In September 2009, the Forest Service formally consulted with the Fish and Wildlife Service to assess specific effects of the Project on the spotted owl. AR 4822. The resulting Biological Opinion ("BiOp") determined that while the Project would likely adversely affect specific owls, it would not further threaten the species' continued existence. AR 4934-36.

On June 23, 2010, defendant published an Environmental Assessment ("EA") of the Goose Project. The EA included references to both the BiOp and the BA. See, e.g., AR 13554, 13555. Following a review of the comments received in response to the EA, defendant issued a Decision Notice and Finding of No Significant Impact ("FONSI") on September 13, 2010. AR 15232-86. The decision approved the Project with only minor modifications. In November 2010, plaintiffs challenged the Project via administrative protest. AR 15435-42. On December 16, 2010, defendant responded to these protests and denied plaintiffs' appeal. AR 15456-64.

After exhausting their administrative remedies, plaintiffs

Page 3 - OPINION AND ORDER

filed a complaint in this Court, alleging that: (1) the 2010 EA and FONSI violated the National Environmental Policy Act ("NEPA") by failing to disclose requisite information; and (2) the proposed actions triggered NEPA's requirement that defendant prepare an Environmental Impact Statement ("EIS"). Thereafter, the parties filed cross-motions for summary judgment. In its March 21, 2013 opinion and order ("Opinion"), this Court granted summary judgment in favor of defendant on plaintiffs' first claim. On plaintiff's second claim, however, the Court found that defendant violated NEPA and, accordingly, "enjoined [defendant] from going forward with the Goose Project until an EIS has been prepared." Cascadia Wildlands v. U.S. Forest Serv., 2013 WL 1296084, *12 (D.Or. Mar. 21, 2013). On April 23, 2013, defendant moved for reconsideration regarding the relief granted on plaintiff's second claim.

## STANDARDS

A party may filed a "motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Reconsideration under Fed. R. Civ. P. 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc), cert. denied, 529 U.S. 1082 (2000) (citation omitted).

## DISCUSSION

Defendant contends that it was clear error for the Court to

Page 4 - OPINION AND ORDER

preliminarily enjoin the Project without analyzing the four-factor test outlined in <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008). In other words, defendant does not challenge this Court's substantive determination that it violated NEPA and, as a result, an EIS is required for the Project. <u>See generally</u> Def.'s Mem. in Supp. of Mot. Recons.; Def.'s Reply to Mot. Recons. Rather, defendant "requests that this Court amend its summary judgment ruling to remove the blanket injunction"; once the injunction is removed, "[d]efendant proposes that this Court's remand instructions authorize implementation of the Goose Project within a single 27-acre timber unit ('Unit 720') that has already been sold to a timber company." Def.'s Mem. in Supp. of Mot. Recons. 3; <u>see also</u> Def.-Intervenors' Mem. in Supp. of Mot. Recons. 2 ("Freres wants to harvest the timber this summer"). Thus, while not phrased as such, defendant is essentially asking the Court to determine that, prior to the issuance of an EIS, timber activities in Unit 720 will not violate 40 C.F.R. § 1506.1.[2] Def.'s Mem. in Supp. of Mot. Recons. 7 (arguing that timber operations in Unit 720 should be allowed, with "further NEPA review,"[3] because there is no indication that the proposed action would negatively affect the

---

[2] Neither party cites to or discusses this statute in their briefs; however, because defendant does not challenge this Court's determination that an EIS is required for the Project, the Court could find no other mechanism for the proposed action given the procedural posture of this case.

[3] Defendant does not specify what constitutes "further NEPA review" in this context. Def.'s Mem. in Supp. of Mot. Recons. 7.

Page 5 - OPINION AND ORDER

environment).[4]

I. <u>Preliminary Matter</u>

Plaintiffs argue that defendant's motion should be denied "[b]ecause the Court has not yet entered a Judgment [such that] there is no Judgment to alter or amend" pursuant to Fed. R. Civ. P. 59(e). Pls.' Resp. to Mot. Recons. 2. Specifically, plaintiffs contend that where, as here, a judgment has "not been entered in a separate document, Judgment is considered entered if 150 days have elapsed since the entry of the order on the Docket"; because 150 days have not transpired since the Opinion, defendant's motion is untimely. <u>Id.</u> (citing Fed. R. Civ. P. 58 and <u>Stephanie-Cardona, LLC v. Smith's Food & Drug Ctrs., Inc.</u>, 476 F.3d 701, 703-04 (9th Cir. 2007)).

The Court finds plaintiffs' argument unpersuasive. Essentially, plaintiffs' position does not foreclose the possibility of a Fed. R. Civ. P. 59(e) motion, it only delays it.

---

[4] Initially, the Court notes that the issue of whether Unit 720 should be carved out and treated separately from the remainder of the Goose Project because timber operations therein allegedly will not have an adverse impact on the environment was not raised pursuant to defendant's cross-motion for summary judgment; instead, defendant argued broadly that an EIS was not required for the entire Project. <u>See generally</u> Def.'s Mem. in Supp. of Cross-Mot. Summ. J.; Def.'s Reply to Cross-Mot. Summ. J. While the Court acknowledges that defendant's arguments in favor of allowing timber operations in Unit 720 are, in part, responsive to issues discussed in the Opinion, this issue nonetheless could and should have been raised below. <u>See, e.g.</u>, <u>Belinda K. v. Baldovinos</u>, 2012 WL 3249481, *3 (N.D.Cal. Aug. 7, 2012) (denying a motion to reconsider where it was "based on facts and argument that could have been, but were not, raised during the summary judgment proceedings," citing <u>Zimmerman v. City of Oakland</u>, 255 F.3d 734, 740-41 (9th Cir. 2001), <u>cert. denied</u>, 543 U.S. 819 (2004)).

Page 6 - OPINION AND ORDER

Here, however, delaying disposition of defendant's motion would serve no useful purpose. Briefing is complete and this case has gone under advisement. Further, defendant filed a motion to stay this case pending resolution of the present motion, which included a May 2013 deadline for initial briefing; because plaintiffs did not oppose that motion, it would be inequitable for the Court to deny defendant's request for reconsideration as untimely. Finally, as of the date of this decision, over 150 days have lapsed since the Opinion.

II. Defendant's Motion to Reconsider

It is undisputed that plaintiffs did not request, or otherwise provide argument or evidence in favor of, a preliminary injunction in their motion for summary judgment. See generally Pls.' Mem. in Supp. of Mot. Summ. J.; Pls.' Reply to Mot. Summ. J. It is also undisputed that this Court did not undertake the requisite four-factor analysis prior to "enjoin[ing] [defendant] from going forward with the Goose Project until an EIS has been prepared." Cascadia, 2013 WL 1296084 at *12; see also Winter, 555 U.S. at 19-24 (outlining the standard for a preliminary injunction). Thus, the Court committed clear error by issuing blanket injunctive relief where plaintiffs neither requested such relief nor was it deemed warranted under Winter.[5] See Monsanto Co. v. Geertson Seed

---

[5] Plaintiffs interpret the "word 'enjoin' . . . to effect a vacatur and remand of the agency's decision, and not a traditional permanent injunction as contemplated by the Monsanto court." Pls.' Resp. to Mot. Recons. 4. While that may have been the Court's intent, the language of the Opinion is nonetheless ambiguous. See Cascadia, 2013 WL 1296084 at *12.

Page 7 - OPINION AND ORDER

Farms, 130 S.Ct. 2743, 2758-59 (2010) (reversing the district court's injunctive relief under NEPA as premature and not narrowly tailored where a less drastic remedy was available); N. Cheyenne Tribe v. Norton, 503 F.3d 836, 844 (9th Cir. 2007) ("[i]f the district court had issued an automatic injunction prohibiting all development without balancing the four equitable considerations, it would have violated eBay and Amoco"); see also Pl.'s Resp. to Mot. Recons. 4 (acknowledging that a less drastic remedy would sufficiently redress their injury).

Nevertheless, as plaintiffs correctly note, agencies generally are not allowed to undertake any major federal action affecting the quality of the environment until the EIS is completed. See 40 C.F.R. § 1506.1; see also 5 U.S.C. § 706(2)(A). In other words, where, as here, an agency violates NEPA, it cannot go forward with the proposed action unless and until NEPA has been complied with, regardless of whether the court formally enjoined the agency from proceeding with the proposed action or merely remanded the erroneous decision to the agency with instructions. Id.; see also Metcalf v. Daley, 214 F.3d 1135, 1142 (9th Cir. 2000) ("[a]n assessment must be prepared early enough so that it can serve practically as an important contribution to the decisionmaking process and will not be used to rationalize or justify decisions already made"). There are, however, exceptions to the general rule: "The agency is permitted to take actions that will not have an adverse impact on the environment and will not limit the choice

Page 8 - OPINION AND ORDER

of a reasonable alternative."[6]  Comm. for Pres. of Seattle Fed. Reserve Bank Bldg. v. Fed. Reserve Bank of S.F., 2010 WL 1138407, *4 (W.D.Wash. Mar. 19, 2010) (citing 40 C.F.R. § 1506.1(a)); see also Monsanto, 130 S.Ct. at 2750 (citing 40 C.F.R. § 1506.1(a), (c)).

Here, defendant argues that timber operations in Unit 720 will not have an adverse impact on the environment because: (1) "Unit 720 is remote from the Potential Wilderness Area and contains no Riparian Reserves"; (2) "[o]perations will not include the construction of any new or temporary roads; (3) "Unit 720 is within 'Matrix' lands designated for timber harvest under the [NFP]"; (4) "operations in this unit will neither 'harm' any owl site nor 'take' any threatened northern spotted owls"; (5) "Unit 720 is outside of the designated critical habitat for the specifies"; (6) "operations in Unit 720 will remove a small portion of habitat for a single historic site where owls were last detected in 1991, but will not affect the viability of the site"; and (7) "[t]he timber to be harvested does not comprise old-growth or late-successional trees." Def.'s Mem. in Supp. of Mot. Recons. 7 (citing Rudisill Decl. ¶¶ 4, 6, 8; and Kamrath Decl. ¶¶ 4, 7-8, 10). Defendant also notes that the proposed timber activities "provid[e] for even less impacts than the Goose alternative that [p]laintiff endorsed." Id. at 8.

---

[6] While both parties discuss the environmental aspects of timber operations on Unit 720, neither party addresses the issue of reasonable alternatives. See generally Def.'s Mem. in Supp. of Mot. Recons.; Pls.' Resp. to Mot. Recons.; Def.'s Reply to Mot. Recons.

Page 9 - OPINION AND ORDER

Plaintiffs do not directly respond to all of defendant's contentions. Rather, plaintiffs "are opposed to this request for relief" because "Unit 720 qualifies as mature or late successional forest according to the [NFP], a forest habitat type that is very important to the persistence and recovery of the northern spotted owl." Pls.' Resp. to Mot. Recons. 7-8 (citing SAR 106, 145-46; Second Heiken Decl. ¶ 18 & Exs. B, D). Plaintiffs also argue that "Unit 720 currently qualifies as suitable northern spotted owl habitat, and given that this habitat is rare, the Forest Service's acknowledgment of the Goose project's uncertain and controversial effects that will adversely affect the owl, AR 2754-2755, 13494, and this Court's concern about how logging in the Goose project area will affect owls, Opinion [at] 22-27, the agency and its contractors should not be permitted to benefit from a legal deficiency by logging this harvest [which would] delay the full use of this forest by owls and other late-successional species." Id. at 9 (citing AR 5084-5101, 13652-53, 13655-56, 13659-60, 13668-78; Second Heiken Decl. ¶¶ 10, 20, 29-31). Additionally, plaintiffs assert that because "Unit 720 is not slated for thinning [and instead] is proposed for 'regeneration harvest' (similar to clear cutting), which removes almost all of the trees and would only retain 20% of the forest canopy post logging, significant adverse ecological effects [would result]." Id. (citing AR 15257, 13446; Second Heiken Decl. ¶¶ 11-17, 23; Second Laughlin Decl. ¶ 8). Lastly, plaintiffs acknowledge their "support [of] Alternative 3 over Alternative 2 in the Goose EA," but not that this endorsement

Page 10 - OPINION AND ORDER

"was not unconditional or unqualified." Id. at 10.

Based on the evidence of record, the Court cannot conclude that timber operations in Unit 720 would not have an adverse impact on the environment. Defendant's are correct that some of the significance factors discussed in the Opinion are not directly implicated here. Nonetheless, at least two such factors - i.e. the highly uncertain or highly controversial effects of the Project regarding interspecies competition, and the downgrade or elimination of spotted owl habitat - are applicable to Unit 720. See Cascadia, 2013 WL 1296084 at *8-12. Further, defendant does not dispute that, although the site at issue does not contain critical spotted owl habitat, it nonetheless provides suitable habitat for that species, which is rare. This, combined with the fact that Unit 720 is slated for regeneration harvest, which is more disruptive to the environment, indicates that the affects of such operations are environmentally adverse, especially in the absence of an EIS. See Monsanto, 130 S.Ct. at 2768-69 (discussing 40 C.F.R. § 1506.1 where the agency "had already been ordered to conduct an EIS" and wanted to deregulate certain actions, and cautioning "[c]ourts [to] remember that in many cases allowing an agency to proceed makes a mockery of the EIS process, converting it from analysis to rationalization") (citation and internal quotations omitted).

Accordingly, commencing timber operations in Unit 720 prior to the issuance of an EIS would violate 40 C.F.R. § 1506.1. Nevertheless, because NEPA is a procedural statute, the Court

Page 11 - OPINION AND ORDER

cannot dictate the contents of defendant's EIS or any substantive result; thus, once defendant undertakes the requisite analysis, it is free to authorize timber operations in Unit 720, provided that such a decision is not arbitrary and capricious.

## CONCLUSION

Defendant's motion for reconsideration (doc. 42) is DENIED as to the implementation of the timber operations in Unit 720 prior to the completion of an EIS and GRANTED in all other respects. As such, the second paragraph of the Opinion's conclusion is amended as follows: "Because defendant's decision violated NEPA in light of the potentially significant affect of the Goose Project, this case is remanded to the agency in order to prepare an EIS consistent with this opinion." The parties' requests for oral argument are denied as unnecessary.

IT IS SO ORDERED.

Dated this 17 of August 2013.

_____
Ann Aiken
United States District Judge